# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARGUERITE MACQUEEN, INDIVIDUALLY, AS THE ADMINISTRATRIX OF THE ESTATE AS THE SURVIVING SPOUSE OF DAVID MACQUEEN, DECEASED, | ) ) ) ) ) ) | C.A. No.: 1:13-cv-00835 SLR-SRF |
| Plaintiff, | ) ) | |
| v. | ) ) | TRIAL BY JURY OF TWELVE DEMANDED |
| UNION CARBIDE CORPORATION, et al. | ) ) | |
| Defendants. | ) | |

### DEFENDANT ELLIOTT COMPANY'S RESPONSE IN
### OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

**MORGAN LEWIS & BOCKIUS, LLP**

Kelly A. Costello, Esquire (I.D. #3382)
The Nemours Building, Suite 501
1007 N. Orange Street
Wilmington, DE  19801
Telephone:  (302) 574-7289
kcostello@morganlewis.com

Dated: June 21, 2013          *Attorney for Defendant Elliott Company*

# <u>TABLE OF CONTENTS</u>

**Page**

FACTUAL BACKGROUND ............................................................................................. 1

I.     ELLIOTT DESIGNED, MANUFACTURED, AND SOLD EQUIPMENT FOR
USE IN NAVY WARSHIPS ................................................................................ 1

II.    PLAINTIFF ALLEGES DESIGN-DEFECT AND FAILURE-TO-WARN
CLAIMS AGAINST ELLIOTT FOR EQUIPMENT IT MANUFACTURED FOR
USE ON NAVY WARSHIPS .............................................................................. 4

ARGUMENT AND AUTHORITIES ............................................................................... 5

I.     LEGAL STANDARDS FOR REMOVAL UNDER THE FEDERAL OFFICER
STATUTE.............................................................................................................. 5

II.    ELLIOTT PROPERLY REMOVED THIS CASE UNDER THE FEDERAL
OFFICER STATUTE ............................................................................................ 7

      A.    It Is Undisputed That Elliott Satisfies The First Two Requirements For
Removal Under The Statute....................................................................... 7

      B.    Elliott Satisfies The Third Statutory Requirement Of Asserting A
Colorable Federal Defense......................................................................... 8

            1.    The Remand Motion Ignores Elliott's Assertion Of A Colorable
Federal Defense As To Plaintiff's Design-Defect Claims ......................... 9

            2.    Contrary To Plaintiff's Assertions, The Government Contractor
Defense Is Available Against Failure-To-Warn Claims .......................... 10

            3.    Elliott Has Asserted a Colorable Government Contactor Defense .......... 13

            4.    Plaintiff's Efforts To Dispute The Factual Merits Of Elliott's
Federal Defense Only Confirm That Elliott Is Entitled To A
Federal Forum To Adjudicate That Dispute ........................................... 16

      C.    Elliott Has Established The Requisite Nexus Between Plaintiff's Claims
And Elliott's Conduct Performed Under Color Of A Federal Office ................. 18

CONCLUSION ............................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amoche v. Guarantee Trust Life Ins. Co.*,
   556 F.3d 41 (1st Cir.2009) ...................................................................................19

*Arizona v. Manypenny*,
   451 U.S. 232 (1981) ..........................................................................................1, 6

*Barrett v. CLA-VAL Co.*,
   Slip Opinion, CV 07-7774-PSG ....................................................................12, 20

*Boyle v. United Technologies Corp.*,
   487 U.S. 500 (1988) ................................................................................. *passim*

*Calhoun v. Murray*,
   507 Fed. App'x 251 (3d Cir. 2012) .....................................................................19

*Faddish v. Gen. Elec. Co.*,
   No. 09-70626, 2010 WL 4146108 (E.D. Pa. Oct. 20, 2010) ................................12

*Faulk v. Owens-Corning Fiberglass Corp.*,
   48 F. Supp. 2d 653 (E.D. Tex. 1999) ..................................................................20

*Feidt v. Owens Corning Fiberglas Corp.*,
   153 F.3d 124 (3d Cir. 1998) ......................................................................5, 7, 18

*Getz v. Boeing Co.*,
   654 F.3d 852 (9th Cir. 2011) ..................................................................... *passim*

*Good v. Armstrong World Indus., Inc.*,
   914 F. Supp. 1125 (E.D. Pa. 1996) ......................................................................6

*Hagen v. Benjamin Foster Co.*,
   739 F. Supp. 2d 770 (E.D. Pa. 2010) ......................................................... *passim*

*Hawaii Federal Asbestos Cases*,
   960 F.2d 806 (9th Cir. 1992) ..............................................................................10

*Holdren v. Buffalo Pumps, Inc.*,
   614 F. Supp. 2d 129 (D. Mass. 2009) ...........................................................17, 19

*In re Asbestos Prods. Liab. Litig. (No. VI)*,
   770 F. Supp. 2d 736 (E.D. Pa. 2011) ....................................................................9

*In re Asbestos Prods. Liab. Litig. (No. VI)*,
    830 F. Supp. 2d 1377 (M.D.L. 2011). ..................................................................12

*In re Joint E. & S. Dist. New York Asbestos Litig.*,
    897 F.2d 626 (2d Cir. 1990)..............................................................................19

*Kirks v. Gen. Elec. Co.*,
    654 F. Supp. 2d 220 (D. Del. 2009).........................................................6, 11, 17

*Lindenmayer v. Allied Packing & Supply, Inc.*,
    No. C09–05800, 2010 WL 234906 (N.D. Cal. Jan. 14, 2010) .................................12

*Machnik v. Buffalo Pumps, Inc.*,
    506 F. Supp. 2d 99 (D. Conn. 2007).....................................................................11

*Megill v. Worthington Pump, Inc.*,
    No. CIV. A. 98–76–SLR, 1999 WL 191565 (D. Del. Mar. 26, 1999) ............7, 8, 20

*Mesa v. California*,
    489 U.S. 121 (1989)..............................................................................................8

*Moore v. Asbestos Defendants*,
    No. CV 10-01638 RS, 2010 WL 2650487 (N.D. Cal. July 1, 2010) .......................12

*Mouton v. Flexitallic*,
    No. 99-0162, 1999 U.S. Dist. LEXIS 5632 (Apr. 16, 1999 E.D. La.)....................20

*N.J. Dep't of Envtl Protection v. Viacom, Inc.*,
    C.A. No. 06-1753 (HAA), 2006 WL 3534364 (D.N.J. Dec. 7, 2006).....................8

*Nesbiet v. Gen. Elec. Co.*,
    399 F. Supp. 2d 205 (S.D.N.Y. 2005).........................................................2, 11, 15

*Nguyen v. Allied Signal, Inc.*,
    No. C 98-03616 SI, 1998 U.S. Dist. LEXIS 15517 (N.D. Cal. Sept. 29, 1998).....20

*Niemann v. McDonnell Douglas Corp.*,
    721 F. Supp. 1019 (S.D. Ill. 1989)..................................................................2, 15

*Oliver v. Oshkosh Truck Corp.*,
    96 F.3d 992 (7th Cir. 1996) ......................................................................11, 13, 15

*Overly v. Raybestso Manhattan*,
    No. C–96–2853, 1996 WL 532150 (N.D. Cal. Sept. 6, 1996)...............................12

*Prewett v. Goulds Pumps*,
    C09-0838, 2009 U.S. Dist. LEXIS 91732 (W.D. Wash. Sept. 9, 2009)..................12

*Ruppel v. CBS Corp.*,
    701 F.3d 1176 (7th Cir. 2012) ..................................................................... *passim*

*Scarbrough v. General Electric Co.*,
    Slip Opinion, CV 07-1192-RGK (C.D. Cal. Apr. 13, 2007) ............................12, 20

*Snell v. Bell Helicopter Textron, Inc.*,
    107 F.3d 744 (9th Cir. 1997) ...........................................................................16

*Sun Buick, Inc. v. Saab Cars USA, Inc.*,
    26 F.3d 1259 (3d Cir. 1994)..............................................................................6

*Tate v. Boeing Helicopters*,
    55 F.3d 1150 (6th Cir. 1995) .............................................................................9

*United Food & Comm. Workers Union, Local 919, AFL–CIO v. CenterMark Prop.*
    *Meriden Sq., Inc.*,
    30 F.3d 298 (2d Cir.1994).................................................................................19

*USX Corp. v. Adriatic Ins. Co.*,
    345 F.3d 190 (3d Cir. 2003)...............................................................................1

*Vedros v. Northrop Grumman Shipbuilding, Inc.*,
    C.A. No. 2:11-67281-ER, 2012 WL 3155180 (E.D. Pa. Aug. 2, 2012) ...............6, 7

*Venzia v. Robinson*,
    16 F.3d 209 (7th Cir. 1994) ...........................................................................8, 18

*Watson v. Philip Morris Cos.*
    551 U.S. 142 (2007)..........................................................................................6

*Williams v. Gen. Elec. Co.*,
    418 F. Supp. 2d 610 (M.D. Pa. 2005) ................................................................8

*Willingham v. Morgan*,
    395 U.S. 402 (1969)........................................................................................1, 6

## Statutes

28 U.S.C. § 1331 .......................................................................................................5

28 U.S.C. § 1442(a)(1)........................................................................................1, 5, 6, 7

iii

## DEFENDANT ELLIOTT COMPANY'S RESPONSE IN
## OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

As the Supreme Court has repeatedly made clear, the "right of removal is absolute for conduct performed under the color of federal office," and therefore the "policy favoring removal 'should not be frustrated by a narrow, grudging interpretation'" of the federal officer statute, 28 U.S.C. § 1442(a)(1).  *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).  Thus it is well settled that a defendant like Elliott Company ("Elliott") need not prove it will ultimately prevail on the merits of its federal officer defense to defeat a remand motion.  *Id.*  It is enough that Elliott has "raise[d] a *colorable* defense." *Willingham*, 395 U.S. at 406-07 (emphasis added).

Plaintiff devotes the vast bulk of her oversized brief to various arguments *on the merits* of Elliott's federal defense.  But those arguments are ultimately self-defeating, because they only underscore that a federal court should determine that federal question—just as Congress intended when it passed the federal officer statute.  Because this federal court is the proper forum for adjudicating the merits of Elliott's federal defense—which easily satisfies the controlling "colorability" standard—plaintiff's motion to remand must be denied.

## FACTUAL BACKGROUND

### I.    Elliott Designed, Manufactured, And Sold Equipment For Use In Navy Warships

Elliott designed, manufactured, and sold equipment to the Navy for use in engine rooms of naval warships.  *See* Affidavit of David R. Sargent, Jr. ¶ 9 ("Sargent Affidavit"), attached as Exhibit 1.[1]  Navy warships must be designed to operate effectively in very harsh and hostile

---

[1] The Court may consider the affidavit filed in support of this Opposition Brief.  *See USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 205 n.12 (3d Cir. 2003) (considering facts contained in affidavit filed in response to remand motion); *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 773 n.5 (E.D. Pa. 2010) (considering declarations filed in support of opposition to remand motion because "the Court is

environments, to survive battle and fight again, and to meet demanding speed and maneuvering requirements.  *Id.* ¶ 13.

The Navy communicated precise specifications for needed equipment to vendors such as Elliott when the Navy issued Requests for Proposals.  *Id.* ¶ 30.  Elliott equipment could not have been installed aboard Navy ships unless the Navy first determined that equipment conformed with all applicable Navy specifications.  *Id.*  The Navy thus required extensive testing and approval to ensure that the equipment was suitable for the unique operating environment aboard Navy warships.  *Id.* ¶ 32.  The Navy also required manufacturers to supply plans and drawings, which the Navy would approve.  *Id.* ¶ 33.

In particular, the Navy possessed significant expertise in the areas of heat transfer and insulation, as the need for insulation associated with various equipment and systems was a significant issue in the design of Navy ships from a number of perspectives.  *Id.*  The Navy thus prepared detailed drawings and plans showing the precise methods and materials—such as asbestos—used for insulating various systems and equipment.  *Id.* ¶ 45.

The Navy was aware of the potential hazards of asbestos as early as 1922, and by the 1940s, the Navy's knowledge of the potential hazards of asbestos was quite complete when compared to the available knowledge at the time.  *See, e.g.*, *Nesbiet v. Gen. Elec. Co.*, 399 F. Supp. 2d 205, 212 (S.D.N.Y. 2005) ("Navy's knowledge of the dangers of asbestos on board its ships was state-of-the-art."); *Niemann v. McDonnell Douglas Corp.*, 721 F. Supp. 1019, 1028 (S.D. Ill. 1989) ("[T]he government was aware of the risks of the use of asbestos, and chose to continue to use asbestos in spite of this knowledge.").

permitted to look beyond the pleadings to the evidence submitted by the parties regarding the Motion to Remand").

Manufacturers were required to supply drawings and plans, and at times draft technical manuals for equipment.  Sargent Affidavit ¶ 51.  The Navy developed precise specifications for any markings, communications, or directions affixed to or made a part of any equipment supplied by manufacturers such as Elliott for ultimate use aboard Navy ships.  *Id.* ¶ 52.  Under the specifications, regulations, procedures, and actual practice as it evolved in the field, Elliott was not permitted to vary or to deviate in any respect from the Navy's specifications—including affixing any type of warning or caution statement to equipment intended for installation in a Navy ship—beyond those specifically required by the Navy without prior discussion and express approval by the Navy.

The Navy likewise had precise specifications as to any written materials to be delivered with equipment supplied by manufacturers to the Navy.  *Id.* ¶ 54.  This written material included design drawings, system schematics, and operator reference materials to assist the equipment operators in operating, servicing, and maintaining the equipment—and to assist the Navy training establishment to develop instructional materials and courses.  *Id.*  The Navy required that the draft manuals be submitted for detailed review and feedback.  *Id.*  Once a draft manual was approved, it became an official document the contents of which were controlled by the Navy.  *Id.*

Navy personnel participated extensively in preparing and reviewing instruction books and technical manuals in a standardized format used by the Navy.  *Id.* ¶ 56.  The manuals included safety information to the extent—and only to the extent—that the Navy directed.  *Id.*  The Navy closely controlled content to ensure consistency with the overall goals and priorities of Navy operations.  *Id.* ¶ 57.  Uniformity and consistency of all communications—particularly those concerning safety information—were (and are) critical to the operation of the Navy and its ships.  *Id.* ¶ 58.  Thus the Navy would not have permitted Elliott or any other equipment supplier to

3

place asbestos-related warnings on packaging or containers for equipment supplied during the 1940s, 1950s, or 1960s. *Id.* ¶ 59.

## II.   Plaintiff Alleges Design-Defect And Failure-To-Warn Claims Against Elliott For Equipment It Manufactured For Use On Navy Warships

Plaintiff—who filed her original complaint in Delaware state court against numerous defendants, including Elliott—alleges, as relevant here, that her deceased husband, David MacQueen, "was exposed to asbestos and asbestos-containing products in the course of his employment" in the Navy from 1956 to 1960. *See* Complaint ¶ 10; D.I. 1 ¶ 2. Plaintiff alleges the asbestos products were "mixed, mined, manufactured, distributed, sold, removed, installed and/or used by [d]efendants." *See* Complaint ¶ 12; D.I. 1 ¶ 2.

Plaintiff claims that "[d]efendants were negligent in that they failed to exercise ordinary care and caution for the safety of Mr. MacQueen in that they:

(a)     Failed to substitute, suggest, promote or require the substitution of materials other than asbestos in their products when adequate substitutes, for the asbestos in those products, were available;

(b)     Included asbestos in their products, even though it was completely foreseeable and could or should have been anticipated that persons, such as Plaintiff's decedent David MacQueen, working around them would inhale, ingest, or otherwise absorb asbestos;

(c)     Include asbestos in their products when Defendants knew or should have known that said asbestos fibers would have a toxic, poisonous and highly deleterious upon the health of persons inhaling, ingesting or otherwise absorbing them;

* * *

(g)     Failed to adequately test, research and investigate asbestos and asbestos containing products manufactured, sold, delivered or installed by the Defendants and/or their effects prior to sale, use, and/or exposure of Plaintiff's decedent David MacQueen, as well as other business invitees, users, bystanders, household members, members of the general public and others similarly situated knowing that they would not discover or realize the danger or would fall to protect themselves against it;

(h)     Failed to adequately package, distribute and/or use asbestos and asbestos-

4

containing products manufactured, sold, delivered or installed by the Defendants in a manner, which would minimize the escape of asbestos fibers therefore adding to the exposure of Plaintiff's decedent David MacQueen, as well as other business invitees, users, bystanders, household members, members of the general public and others similarly situated knowing that they would not discover or realize the danger or would fall to protect themselves against it;

(i)     Designed, manufactured and sold equipment, vehicles, machinery, technologies and systems that included asbestos containing components and required and/or specified the use of asbestos-containing replacement components.

(j)     Failed to exercise reasonable care to protect Plaintiff's decedent David MacQueen against the danger and/or take adequate steps to remedy the above failure, including but not limited to recall of asbestos, abatement of asbestos on their property, recall of asbestos products, to conduct research as to how to cure or minimize asbestos injuries, to distribute asbestos so as to render it safe or safely remove the asbestos now in place.

*Id.* ¶ 27.  Plaintiff further alleges that "each and all defendants used, installed, manufactured, sold and distributed the asbestos-containing products to which [p]laintiff's decedent David MacQueen was exposed, [and that] said products were in a defective condition and unreasonably dangerous." *Id.* ¶ 33.

Elliott timely removed the case to this Court under 28 U.S.C. § 1331 and the federal officer statute, 28 U.S.C. § 1442(a)(1).  D.I. 1 ¶ 8.  Properly notifying the Court of its colorable federal defense as a government contractor, Elliott specifically noted it had the right to remove as to plaintiff's failure-to-warn claims *and* her design-defect claims.  *Id.* ¶¶ 11-12.  Plaintiff subsequently filed a motion to remand focusing exclusively on the failure-to-warn claims.

## ARGUMENT AND AUTHORITIES

## I.     Legal Standards For Removal Under The Federal Officer Statute

The federal officer statute, codified at 28 U.S.0C. § 1442(a)(1), "permits a federal officer, or person acting under such an officer, to remove to federal court any action brought against him in state court for conduct performed under federal direction." *Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3d Cir. 1998).  The federal officer statute is intended to provide a

5

federal forum for those who "*assist*, or . . . help *carry out*, the duties or tasks of the federal superior." *Watson v. Philip Morris Cos.* 551 U.S. 142, 152 (2007) (emphasis in original). Contrary to plaintiff's assertions, the right to remove under the federal officer statute is broadly construed, and all doubts must be resolved in favor of removal. *Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1262 (3d Cir. 1994). This broad construction is necessary to avoid frustrating the purpose of the statute—i.e., to have "the validity of the defense of official immunity tried in a federal court." *Willingham*, 395 U.S. at 407; *Sun Buick, Inc.*, 26 F.3d at 1262; *Kirks v. Gen. Elec. Co.*, 654 F. Supp. 2d 220, 222 (D. Del. 2009).[2]

Because the "right of removal is absolute for conduct performed under color of federal office," courts must take care that "the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" *Manypenny*, 451 U.S. at 242 (*quoting Willingham*, 395 U.S. at 407). Accordingly, the defendant "need not win his case before he can have it removed." *Willingham*, 395 U.S. at 407. Rather, removal is proper in "all cases where [the defendant] can raise a *colorable* defense." *Id.* at 406-07 (emphasis added).

Satisfying the "colorable defense" standard merely requires the defendant to "identif[y] evidence which, viewed in the light most favorable to the defendant, would support a complete defense at trial." *Vedros v. Northrop Grumman Shipbuilding, Inc.*, C.A. No. 2:11-67281-ER,

---

[2] Contrary to plaintiff's assertion (D.I. 26 at 9-10), whether the removing defendant is a private contractor like Elliott or a government officer is irrelevant to the legal analysis. As the Seventh Circuit recently observed in rejecting the same argument, reading the federal officer statute to impose a "special burden" on private contractors "finds no support in the statute's authorization of removal by private persons alongside federal officers, drawing no distinction between governmental and private parties, *see* 28 U.S.C. § 1442(a)(1)." *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180 (7th Cir. 2012). To the contrary, "the statute has historically authorized removal by private parties without qualification." *Id.* (quoting *Maryland v. Soper (No. 1)*, 270 U.S. 9, 30 (1926)). Plaintiff's reliance on *Good v. Armstrong World Indus., Inc.*, 914 F. Supp. 1125 (E.D. Pa. 1996), is therefore misplaced. To the extent that court imposed such a limiting construction on the statute, its analysis conflicts with both the statutory language and the Supreme Court's cases construing it.

2012 WL 3155180, at *5 (E.D. Pa. Aug. 2, 2012).  There is no heightened standard of proof in cases involving government contractors.  *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 785 (E.D. Pa. 2010) (ruling by the Court overseeing MDL 875—the federal asbestos MDL); *see Vedros*, 2012 WL 3155180, at *5 ("A heightened standard of proof is not appropriate at this stage of the proceedings.").

## II.   Elliott Properly Removed This Case Under The Federal Officer Statute

Removal to federal court under § 1442(a)(1) is proper where the defendant establishes:

(1)   it is a 'person' within the meaning of the statute;

(2)   the plaintiff's claims are based upon the defendant's conduct 'acting under' a federal office;

(3)   it raises a colorable federal defense; and

(4)   there is a causal nexus between the claims and the conduct performed under color of a federal office.

*Feidt*, 153 F.3d at 127 (*citing Mesa v. California*, 489 U.S. 121, 129 (1989)).  Elliott filed a notice of removal properly setting forth each of these elements.  *See* D.I. 1 ¶ 4.  Plaintiff's remand motion challenges only the third and fourth requirements of the statute: a colorable federal defense, and a causal nexus between plaintiff's claims and defendant's conduct.  As demonstrated below, those requirements are amply satisfied here, and plaintiff's remand motion should therefore be denied.

### A.    It Is Undisputed That Elliott Satisfies The First Two Requirements For Removal Under The Statute

Plaintiff does not challenge (and thus concedes) that the first two elements for removal are satisfied here.  And wisely so.  First, it is well settled that corporations are "persons" for purposes of the federal officer statute.  *See Ruppel*, 701 F.3d at 1181; *Megill v. Worthington Pump, Inc.*, No. CIV. A. 98–76–SLR, 1999 WL 191565, at *3 (D. Del. Mar. 26, 1999).  Second,

there can be no serious question that Elliott "acted under" a federal officer in supplying equipment to the Navy.  *See* Sargent Affidavit ¶¶ 67-71; *see also Ruppel*, 701 F.3d at 1181 ("'Acting under' covers situations, like this one, where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete."); *Megill*, 1999 WL 191565, at *3.

### B.   Elliott Satisfies The Third Statutory Requirement Of Asserting A Colorable Federal Defense

The third element that must be satisfied for removal under the federal officer statute is an "allegation of a colorable defense." *Mesa*, 489 U.S. at 129.  "Courts construe a removing party's assertion of a colorable defense liberally." *Williams v. Gen. Elec. Co.*, 418 F. Supp. 2d 610, 615 (M.D. Pa. 2005) ("We . . . do not require the officer virtually to 'win his case before he can have it removed.'" (*quoting Jefferson County v. Acker*, 527 U.S. 423, 431 (1999) (ellipses in original)).  Thus, a defendant "need not demonstrate for purposes of removal that its asserted defense is meritorious, but only that it has a colorable claim to invoke such a defense." *Id.*

"[T]he Court is not called upon at this preliminary stage to pierce the pleadings or dissect the facts stated." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d at 782.  "Nor is it the Court's function at this stage to determine credibility, weigh the quantum of evidence or discredit the source of the defense." *Id.*  Rather, "[q]uestions regarding the merits of an asserted defense are distinct and have no connection to the question of jurisdiction." *N.J. Dep't of Envtl Protection v. Viacom, Inc.*, C.A. No. 06-1753 (HAA), 2006 WL 3534364, at *3 (D.N.J. Dec. 7, 2006).  "Once the federal defendant has a plausible federal defense, removal is appropriate so that the federal court may determine whether the defense succeeds." *Venzia v. Robinson*, 16 F.3d 209, 212 (7th Cir. 1994).

Here, Elliott asserts the federal government contractor defense articulated by the Supreme

Court in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). *See* D.I. 1 ¶ 11. To establish a colorable claim to that defense on plaintiff's failure-to-warn claims, Elliott need only allege facts tending to prove that (1) the government exercised its discretion and approved certain warnings; (2) Elliott's equipment conformed to those specifications, and (3) Elliott warned the government about dangers in the use of its equipment that were known to Elliott, but not the government. *See Boyle*, 487 U.S. at 512; *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995); *In re Asbestos Prods. Liab. Litig. (No. VI)*, 770 F. Supp. 2d 736, 743 (E.D. Pa. 2011).

Plaintiff, however, argues that (1) the government contractor defense is unavailable for failure-to-warn claims in the asbestos context (D.I. 26 at 12-14), and (2) even if there were such a defense, Elliott is not entitled to it. *Id.* at 15-32. As demonstrated below, both arguments fail. But as an initial matter, this Court need not even reach those arguments because, contrary to plaintiff's assertions, she has pleaded not only failure-to-warn claims, but also design-defect claims—and the remand motion contains no argument that those claims are not properly subject to the government contractor defense (and thus removable under the federal officer statute). The remand motion should be summarily denied for that reason alone.

### 1.    The Remand Motion Ignores Elliott's Assertion Of A Colorable Federal Defense As To Plaintiff's Design-Defect Claims

Plaintiff moves to remand arguing that she asserts claims "*solely* upon these removing defendants' failure to warn David McQueen." *Id.* at 4 (emphasis added). Respectfully, that is not true. Plaintiff seeks recovery on a variety of other grounds, including design defect. Complaint ¶¶ 27, 33. Specifically, plaintiff alleges that Elliott supplied products that were in "defective condition and unreasonably dangerous" and that Elliott "[i]ncluded asbestos in [its] products when [Elliott] knew or should have known that said asbestos fibers would have a toxic, poisonous and highly deleterious upon the health of persons inhaling, ingesting or otherwise

absorbing them." *Id.* These are plainly claims regarding the design of Elliott's products.

The Seventh Circuit recently held in *Ruppel* that similar allegations asserted claims under both a design-defect and failure-to-warn theory. 701 F.3d at 1182-83. The plaintiff there made virtually identical allegations as plaintiff here. *Compare id., with* Complaint ¶ 27. The Seventh Circuit concluded that the plaintiff had asserted both "use-of-asbestos and failure-to-warn claims." *Ruppel*, 701 F.3d at 1183. Similarly here, the complaint does not assert "solely" failure-to-warn claims, and plaintiff has not moved to remand based on Elliott's assertion of the governmental contractor defense as to her design-defect claims. Because Elliott's notice of removal sufficiently alleges facts that, if proved, would establish a federal defense as to those claims, the Court should deny the remand motion for that reason, too. *See* D.I. 1 ¶¶ 11–12.

### 2. Contrary To Plaintiff's Assertions, The Government Contractor Defense Is Available Against Failure-To-Warn Claims

Plaintiff initially argues that there is, as a matter of law, no defense under *Boyle* for failure-to-warn asbestos claims. D.I. 26 at 12-13. In support, plaintiff primarily relies on the Ninth Circuit's decision in the *Hawaii Federal Asbestos Cases*, 960 F.2d 806 (9th Cir. 1992). Although plaintiff does not mention it, the Ninth Circuit has expressly rejected plaintiff's reading in *Getz v. Boeing Co.*, 654 F.3d 852, 865 (9th Cir. 2011). There, the Ninth Circuit correctly reasoned that "[t]o read these cases as limiting" the government contractor defense "to those instances where the government forbids additional warning or dictates the precise contents of a warning would be inconsistent with the Court's decision in *Boyle*." The Ninth Circuit thus confirmed that "*Boyle* makes clear that government discretion, rather than dictation, is the standard." *Id.* The Ninth Circuit itself has thus expressly rejected the same argument that plaintiff presses here. This Court should reject it, as well.

In *Getz*, the Ninth Circuit adopted the Seventh Circuit's reasoning in *Oliver* that "any

strict requirement that the government 'prohibit' warnings altogether or 'dictate' the contents of the warnings actually incorporated" would be inconsistent with the Supreme Court's decision in *Boyle. Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1004 n.8 (7th Cir. 1996).  The Seventh Circuit thus had little difficulty rejecting the categorical argument that cases alleging asbestos failure-to-warn claims are not removable under the federal officer statute.  *See Ruppel*, 701 F.3d at 1185-86.  Instead, the Seventh Circuit held that the defendant there established a colorable government contractor defense by asserting facts tending to show that the "Navy controlled the content and placement of warnings" and that "the Navy supplied its own instruction manuals with precautions."  *Id.* at 1185.  The Seventh Circuit further determined that the defendant alleged facts which, if proven, would show that the defendant complied with the Navy's warning and that "there is nothing [the defendant] knew about asbestos that the Navy did not."  *Id.*

Elliott, just like the defendant in *Ruppel*, supplied equipment to the Navy, which controlled the content and placement of the warnings.  D.I. 1 ¶¶ 13, 15-16.  Elliott, just like the defendant in *Ruppel*, complied with these warnings.  *Id.*  Here, just as in *Ruppel*, there was nothing Elliott knew about asbestos that the Navy did not—and plaintiff does not argue otherwise.  *Id.* ¶ 15.  Therefore Elliott, just like the defendant in *Ruppel*, has asserted a colorable government contractor defense the ultimate merits of which should be determined in federal court.  *Id.* ¶¶ 13, 15-16.

Numerous other courts have reached the same conclusion and held that removal under the federal officer statute is proper where, as here, a defendant equipment supplier asserts a colorable federal defense in a suit for asbestos-related injuries in the failure-to-warn context.  *See, e.g.*, *Kirks*, 654 F. Supp. 2d 220; *Nesbiet*, 399 F. Supp. 2d at 213; *Machnik v. Buffalo Pumps, Inc.*, 506 F. Supp. 2d 99, 105 (D. Conn. 2007).  And as the Court presiding over the Federal Asbestos

11

MDL noted, the contention that the Navy had to affirmatively forbade asbestos warnings "has been rejected by every Circuit court to consider the issue." *Faddish v. Gen. Elec. Co.*, No. 09-70626, 2010 WL 4146108, at *8 (E.D. Pa. Oct. 20, 2010). To the extent plaintiff's cited cases—primarily from district courts in California that rely on the same erroneous reading of the *Hawaii Cases* that the Ninth Circuit rejected in *Getz*—hold otherwise, they are unpersuasive.[3] And especially so in light of the superior analysis of the district court overseeing the federal multidistrict proceedings related to asbestos in *Hagen*, which the Judicial Panel on Multidistrict Litigation has designated as among the "substantive and thoughtful rulings" issued by the MDL court that should guide other district courts presiding over asbestos cases like this one. *In re Asbestos Prods. Liab. Litig. (No. VI)*, 830 F. Supp. 2d 1377, 1379 (M.D.L. 2011).

In *Hagen*, the defendants asserted that (1) military specifications governed every aspect of the equipment and required specific instructions and warnings; (2) equipment manufacturers had to provide the warnings expressly called for by the specifications; and (3) the Navy possesses "state of the art" knowledge about the dangers of asbestos from the 1920s on. 739 F. Supp. 2d at 775. The *Hagen* court therefore held that the case had been properly removed under the federal officer statute because the defendants had asserted a colorable federal contractor defense under *Boyle*. As demonstrated in more detail below, Elliott similarly establishes all of those elements in this case. Plaintiff's remand motion should therefore be denied.

---

[3] *See, e.g.*, *Moore v. Asbestos Defendants*, No. CV 10-01638 RS, 2010 WL 2650487, at *1-2 (N.D. Cal. July 1, 2010); *Lindenmayer v. Allied Packing & Supply, Inc.*, No. C09–05800, 2010 WL 234906, at *2-3 (N.D. Cal. Jan. 14, 2010); *Prewett v. Goulds Pumps*, C09-0838. 2009 U.S. Dist. LEXIS 91732, at *11-16 (W.D. Wash. Sept. 9, 2009); *Barrett v. CLA-VAL Co.*, Slip Opinion, CV 07-7774-PSG (C.D. Cal. Feb. 5, 2008); *Scarbrough v. General Electric Co.*, Slip Opinion, CV 07-1192-RGK (C.D. Cal. April 13, 2007); *Overly v. Raybestso Manhattan*, No. C–96–2853, 1996 WL 532150, at *4 (N.D. Cal. Sept. 6, 1996),

### 3.       Elliott Has Asserted a Colorable Government Contactor Defense

As explained above, the elements of the government contractor defense against failure-to-warn claims are that: (1) "the government exercised its discretion and approved certain warnings," which must "go beyond merely 'rubber stamping' the contractor's choice;" (2) "the contractor provided the warnings required by the government"; and (3) "the contractor warned the government about dangers in the equipment's use that were known to the contractor *but not to the government*." *Oliver*, 96 F.3d at 1003-04 (emphasis added).   Elliott has asserted a colorable government contractor defense by asserting facts that, if proved, would establish that defense.

*First*, not only did the government exercise its discretion and approve ***certain*** warnings, it exercised its discretion and approved ***all*** warnings and, in fact, provided these materials directly to the end users. *See* D.I. 1 ¶ 16.  Manufacturers like Elliott were required to supply drawings and plans, and at times to draft technical manuals for equipment.  Sargent Affidavit ¶ 51.  The Navy developed precise specifications as to the nature of any markings, communication or directions affixed to or made a part of any equipment supplied by manufacturers, such as Elliott, for ultimate use aboard Navy ships.  *Id.* ¶ 52.  Elliott would not have been permitted, under the specifications, associated regulations and procedures, nor under the actual practice as it evolved in the field, to vary or to deviate in any respect from the Navy specifications in supplying equipment, including affixing any type of warning or caution statement to equipment intended for installation in a Navy ship, beyond those specifically required by the Navy without prior discussion and express approval by the Navy.  D.I. 1 ¶¶ 14, 16.

The Navy likewise had precise specifications as to the nature of written materials to be delivered with equipment supplied by manufacturers to the Navy.  Sargent Affidavit ¶ 54.  This written material included a variety of formats such as design drawings, system schematics, and

operator reference materials to assist the equipment operators in operating, servicing, and maintaining the equipment and to assist the Navy training establishment to develop instructional materials and courses.  *Id.*  The draft manuals were required to be submitted to the Navy for detailed review and feedback.  *Id.*  Once a draft manual was found to be acceptable to the Navy, the contents of that manual were exclusively controlled by the Navy.  *Id.*

Navy personnel participated intimately in the preparation and review of these instruction books and technical manuals in a standardized format used by the Navy.  *Id.* ¶ 56.  These manuals included safety information to the extent—and only to the extent—directed by the Navy.  *Id.*  The Navy closely controlled the content to ensure consistency of that information with the overall goals and priorities of the Navy in its operations.  *Id.* ¶ 57.  Uniformity and standardization of any communication, particularly safety information, are critical to the operation of the Navy and Navy ships.  *Id.* ¶ 58.  The Navy would not have permitted Elliott or other equipment suppliers to place asbestos-related warnings on packaging or containers for equipment supplied during the 1940s, 1950s, or 1960s.  *Id.* ¶ 59.  There can be little real question, then, that the allegations here are sufficient to make out a colorable claim that the first element of the general contractor defense is satisfied.

*Second*, Elliott has alleged facts that, if proven, will demonstrate that it provided the warnings requested by the Navy (and thereby satisfy the second element of the government contractor defense).  Indeed, plaintiff does not seriously challenge that this element of the defense is satisfied here.  And for good reason.  Once a draft manual was approved, it became an official document the contents of which were controlled by the Navy.  *Id.* ¶ 54.  This is because uniformity and consistency of all communications—particularly those concerning safety information—were critical to the operation of the Navy and its ships.  *Id.* ¶ 58. The agreed to

warnings were not provided by Elliott because they were provided by the Navy itself.  *See Ruppel*, 701 F.3d at 1185 (noting that the evidence showed that "the Navy supplied its own instruction manuals with precautions").

*Third*, the Navy was well aware of the dangers of asbestos.  Thus there was nothing Elliott could have told the Navy about those dangers that it did not already know—thereby satisfying the third element of the defense that wanted the government of any dangers *not known to the government*.  *Oliver*, 96 F.3d at 1003-04.  Here, the Navy was aware of the potential hazards of asbestos as early as 1922—and by the 1940s, the Navy's knowledge regarding the potential hazards of asbestos was "state of the art."  *See, e.g.*, *Nesbiet*, 399 F. Supp. 2d at 212; *Niemann*, 721 F. Supp. at 1028 (S.D. Ill. 1989) ("[T]he government was aware of the risks of the use of asbestos and chose to continue to use asbestos in spite of this knowledge.").  Plaintiff makes no serious effort to argue otherwise—and, indeed, rather studiously ignores that the government contractor defense requires a contractor to warn only of dangers not known to the government.  Because the government was well aware of the dangers of asbestos, the third element of the government contractor defense is satisfied, as well.

Plaintiff attempts to get around the "not known to the government" limitation on a contractor's duty to warn for purposes of the government contractor defense by arguing that there must be evidence that the Navy expressly prohibited asbestos warnings.  D.I. 26 at 15-21.  As already demonstrated above, however, that argument relies on a misreading of the *Hawaii Cases* that the Ninth Circuit has expressly rejected.  *See Getz*, 654 F.3d at 865.  The Seventh Circuit has similarly rejected the argument as inconsistent with the Supreme Court's instruction in *Boyle*.  *Oliver*, 96 F.3d at 1004 n.8 ("We cannot accept as consistent with *Boyle* the suggestion that there is any strict requirement that the government 'prohibit' warnings altogether or 'dictate'

15

the contents of the warnings actually incorporated."). This Court should likewise reject plaintiff's attempt to impose additional requirements on the government contractor defense that cannot be reconciled with *Boyle*.

### 4. Plaintiff's Efforts To Dispute The Factual Merits Of Elliott's Federal Defense Only Confirm That Elliott Is Entitled To A Federal Forum To Adjudicate That Dispute

Plaintiff devotes nearly 20 pages to setting forth case law, expert opinions, and documents she claims show Elliott is not entitled to the government contractor defense. *See* D.I. 26 at 15-33. But plaintiff's efforts are trained on disputing the *merits* of the defense—not whether Elliott has established a colorable basis for *asserting* that defense. Plaintiff's arguments about whether certain "evidence" is "admissible," or whether certain expert opinion is "reliable," are thus irrelevant (and inappropriate) at this stage of the proceedings.

The sole issue before this Court is whether Elliott has demonstrated that it is entitled to a federal forum to adjudicate its federal contractor defense—not whether Elliott will ultimately prevail on the merits of that defense. If anything, plaintiff's efforts to argue in her remand motion whether Elliott is entitled to the defense only highlights (if not implicitly concedes) that this Court is the proper forum for that dispute.[4]

Indeed, the whole point of the federal officer statute is for federal courts to adjudicate federal defenses. Because Elliott has established a *colorable* government contractor defense, the federal officer statute entitles Elliott to a federal forum to adjudicate the merits of that defense. Now is not the appropriate time for a point-by-point rebuttal of plaintiffs' arguments (and

---

[4] For example, plaintiff relies heavily on federal cases such as *Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744 (9th Cir. 1997), which address whether the defendant adequately demonstrated that it was entitled to *summary judgment* on the basis of the governmental contractor defense—not whether the case was properly removed in the first instance. If anything, such cases only confirm that whether a government contractor defense is ultimately meritorious is an entirely different question than whether there is a colorable basis for asserting it.

voluminous exhibits) disputing the factual merits of Elliott's government contractor defense. Elliott reserves the right to do so (and to submit more, and different evidence, to further support its defense, as it will be entitled to do) during the course of trial proceedings. For now, it is enough to show that Elliott has established a colorable federal contractor defense. Because Elliott has carried that light burden, plaintiff's remand motion should be denied.

In arguing to the contrary, plaintiff relies heavily on *Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d 129 (D. Mass. 2009), but two district courts in this Circuit have expressly refused to follow *Holdren*—and rightly so. *See Kirks*, 654 F. Supp. 2d at 225-26; *Hagen*, 739 F. Supp. 2d at 782. In rejecting *Holdren*, the district judge in *Kirks* explained that "given that the provisions of the federal officer removal statute are to be construed broadly, and given that [the defendant] has produced evidence demonstrating a significant degree of control by a federal office over the warnings related to the dangers of asbestos, I respectfully reach a contrary conclusion." 654 F. Supp. 2d at 226.

In *Hagen*, after noting that "other courts follow the *Holdren* Court's lead and—albeit not explicitly—apply a heightened standard at the remand stage that requires courts to 'carefully weigh the plausibility of the proffered defense,'" the *Hagen* court rejected this heightened standard. 739 F. Supp. 2d at 782. It instead determined that:

> While the Court must require that the facts identified by the defendant support the federal defense, the Court is not called upon at this preliminary stage to pierce the pleadings or dissect the facts stated. Nor is it the Court's function at this stage to determine credibility, weigh the quantum of evidence or discredit the source of the defense. It is the sufficiency of the facts stated—not the weight of the proof presented—that matters.

*Id.* at 782-83 (internal citation omitted). Just so. The only issue before this Court is whether Elliott has a colorable defense—not whether it will prevail on the merits of that defense. For example, plaintiff proffers opinion evidence from Dr. Barry Castleman that plaintiff claims

17

supports her argument that Elliott is not entitled to the federal contractor defense.  Dr. Castleman

may well disagree with Elliott's expert, Mr. Sargent—but which opinion is correct is not relevant

(or even appropriately determined) at this stage of the proceedings.

Ultimately, plaintiff's real dispute is with the merits of Elliott's government contractor

defense.  That issue, however, is not yet before this Court.  The only issue is whether Elliott has

asserted a colorable defense.  *See Venzia*, 16 F.3d at 212 ("Once the federal defendant has a

plausible federal defense, removal is appropriate so that the federal court may determine whether

the defense succeeds.").  Because Elliott has done so, the federal officer statute requires this

Court to adjudicate the merits of that defense.

### C.   Elliott Has Established The Requisite Nexus Between Plaintiff's Claims And Elliott's Conduct Performed Under Color Of A Federal Office

The last element that must be satisfied for federal officer removal under § 1442 is a nexus

between the claims alleged by the plaintiff and the conduct performed under color of a federal

officer.  *Ruppel*, 701 F.3d at 1181 ("[T]here must be a 'causal connection between the charged

conduct and asserted official authority.'"); *Feidt*, 153 F.3d at 127.  This element can be satisfied

by showing that Elliott's relationship to plaintiff was "'derived solely from [its] official duties'

for the Navy."  *Ruppel*, 701 F.3d at 1181 (alteration in original).  As the *Ruppel* court explained,

the causal connection is shown where a defendant acted under the Navy by installing asbestos,

and that duty gave raise to plaintiff's complaint.  *Id.*  That element is easily satisfied here, where

plaintiff's complaint is premised on the allegation that Elliott acted under the Navy to cause

asbestos products to be installed on naval vessels.   *See* Complaint ¶¶ 11-13.

As the Court in *Hagen* noted, "the causal nexus requirement 'is closely related to

evidence supporting a colorable federal defense' where a government contractor is the defendant

because both elements require the "defendant [to] show that it acted at the federal government's

command."  739 F. Supp. 2d at 785.  It went on to find that "just as the acting under analysis becomes redundant where a defendant in a government contractor case makes out a colorable federal defense, resolving the causal nexus requirement is not difficult in light of the Court's colorability determination because the causal nexus analysis 'is essentially the same as [that associated with] the colorable defense requirement.'"  *Id.*

In arguing to the contrary, plaintiff once again relies on the discredited reasoning in *Holdren*.  But even *Holdren* recognized that "proof of reasonably precise specifications would generally establish the requisite causal connection."  614 F. Supp. 2d at 149-50.  Here, Elliott has proven that it acted under reasonably precise specifications, thereby demonstrating the causal connection.  *See supra* at 13-15.  Morever, the case relied by Plaintiff and the *Holdren* court are not applicable to this case.  D.I. 26 at 10 n.6.  Two of the cases *Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 50 (1st Cir.2009) and *United Food & Comm. Workers Union, Local 919, AFL–CIO v. CenterMark Prop. Meriden Sq., Inc.*, 30 F.3d 298, 305 (2d Cir. 1994), involve removal under the Class Action Fairness Act and § 1441 and do not apply here given the broader nature of removal under § 1442.  *See, e.g., Calhoun v. Murray*, 507 Fed. App'x 251, 260 (3d Cir. 2012).  Plaintiff's reliance on *In re Joint E. & S. Dist. New York Asbestos Litig.*, 897 F.2d 626, 630 (2d Cir. 1990), is misplaced because that case involved a review of the merits of the defense at the summary judgment stage, not a determination of whether it was a colorable defense at the removal stage.

Plaintiff cites a string of cases where no causal connection was found.  *See* D.I. 26 at 34 (citing *Nguyen v. Allied Signal, Inc.*, No. C 98-03616 SI, 1998 U.S. Dist. LEXIS 15517, at *5-6 (N.D. Cal. Sept. 29, 1998); *Megill*, 1999 U.S. Dist. LEXIS 4433, at *10; *Barrett v. CLA-VAL Co.*, Slip Opinion, CV 07-7774-PSG (C.D. Cal. Feb. 5, 2008); *Scarbrough v. General Electric*

19

*Co.*, Slip Opinion, CV 07-1192-RGK (C.D. Cal. April 13, 2007)).  Those cases do not help plaintiff, however, because they too rely on the same mistaken reading of *In re Hawaii* rejected by the Ninth Circuit in *Getz*.  Similarly misplaced is plaintiff's reliance on *Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp. 2d 653, 666 (E.D. Tex. 1999), which involved a facility owner who alleged the government controlled its premises—not whether sufficient warning had been provided by an equipment manufacturer.  Plaintiff's reliance on *Mouton v. Flexitallic*, 99-0162 *et al.*, 1999 U.S. Dist. LEXIS 5632, at *18 (Apr. 16, 1999 E.D. La.), is likewise misplaced as *Mouton* involved warnings to shipyard workers by its employer, not a warning by an equipment supplier to a seaman.

*     *     *

The Court should deny plaintiff's remand motion as it properly has jurisdiction over the instant action.  Because plaintiff did not move to remand the design defect claims, these claims remain before the Court and remand can be denied on this basis alone.  Further, from the face of the Complaint, the Notice of Removal, and the Sargent Affidavit it is apparent that Elliott has met the minimal burden of asserting a colorable governmental contractor defense to plaintiff's design defect and failure to warn claims.  Further, Elliott has demonstrated that there is a nexus between the claims alleged by the plaintiff and the conduct Elliott performed under the direction of the Navy.

**CONCLUSION**

For the foregoing reasons, the motion for remand should be denied.

20

**MORGAN LEWIS & BOCKIUS, LLP**

/s/ Kelly A. Costello

_____

**Kelly A. Costello, Esquire (I.D. #3382)**
The Nemours Building, Suite 501
1007 N. Orange Street
Wilmington, DE  19801
Telephone:  (302) 574-7289
kcostello@morganlewis.com

DATED: June 21, 2013                    *Attorney for Defendant Elliott Company*